[No. 1213.  Decided  August 6, 1894.]

MARY B. POTWIN, *Respondent*, v. F. A. BLASHER *et al.*,
*Appellants.*

FORECLOSURE OF MORTGAGE SECURING PURCHASE MONEY — DE-
FENSES — BREACH OF COVENANT OF SEIZIN — COSTS — ATTOR-
NEY'S FEES — TRIAL — FINDINGS OF FACT.

In an action to foreclose a purchase money mortgage, given for
land which the grantor covenanted to own in fee simple, but to
which he had neither the legal nor the equitable title, the mortgagor
may set off his expenses and outlay in defending and compromis-
ing a suit in ejectment in which the plaintiff has shown a good
cause of action, as a constructive eviction is thereby established.

Where costs in an action depend on facts not ascertained from
the record of the case, the cost bill should itemize the charge.

Costs on execution, being accruing costs which the sheriff adds
as they are made, have no place in a cost bill.

A note and mortgage securing the same constitute but one trans-
action, and where the mortgage provides for an attorney's fee equal
to five per cent. of the amount due, it is error to allow a fee in ex-
cess of such percentage, although the note itself may provide that,
in case of suit thereon, the maker would pay "such sum as the
court may adjudge reasonable as attorney's fees."

The findings of fact made by the court upon the trial of a cause,
either legal or equitable, should cover all the issues, and not merely
such as may be sufficient to support the judgment.

*Appeal from Superior Court, King County.*

*Parsons, Corell & Parsons*, for appellants.

*Ira A. Town*, and *W. W. Likens*, for respondent.

The opinion of the court was delivered by

STILES, J.— The sheriff of King county, on the 19th day
of April, 1883, executed a tax deed of certain lands to
John Murray, reciting in the deed that he had sold the
land April 22, 1881.  This deed was void on its face, hav-
ing been executed three days before the time allowed for

redemption.   Murray quitclaimed the land to Fountain O. Chezum March 12, 1886, and he sold it (reserving two acres) to appellant Blasher, June 18, 1889, covenanting for a fee simple title and warranting against incumbrances. Blasher and wife executed a purchase money mortgage to Chezum for $10,500, and this action was brought by respondent, claiming to be the assignee of the mortgage and unpaid notes, to foreclose the lien.

A purported quitclaim deed from John Moore, the owner, of date January 8, 1890, was immaterial, as it was conceded to have been a forgery, Moore, the grantor, having been for many years an inmate of the insane asylum and another person having executed it.   The respondent, although showing the legal title enabling her to sell, was not a purchaser for value and was chargeable with all defenses maintainable against Chezum.   The tax deed being void, and not having been supported by the limitation law of 1881 (*Ward v. Huggins*, 7 Wash. 617, 32 Pac. 740; *Baer v. Choir*, 7 Wash. 631, 32 Pac. 776), the title wholly failed.   But appellants had taken and retained possession, and this fact is respondent's justification of the judgment entered in the lower court.

There were other material facts, however, which must be stated.   In November, 1890, the guardian of John Moore commenced an action of ejectment against Chezum and purchasers through him.   Chezum was notified to defend the action and promised to do so, but defended only as to his own two acres.   The other defendants thereupon procured their own counsel and filed their answers.   The common defense was the tax deed, based on the three-year statute of limitations.   An error seems to have existed in the mind of all parties to the effect that the sale for taxes had taken place March 22, instead of April 22, 1881, which would have made the deed good on that point.   The guardian, in his reply, denied all the allegations in regard to the tax

deed, and sought to avoid the bar of the statute by pleading the insanity of his ward.    Notwithstanding the denials a demurrer was sustained .to the reply, and the guardian was left with the right to appeal only.    Upon this the parties entered into a compromise, under leave of the probate department of the superior court, whereby the guardian agreed to accept $2,000 for a conveyance of the interest of Moore's estate in the land held by the appellants — two-thirds of the whole.    Chezum procured a like compromise covering his two acres, and took a decree of the court quieting his title.    This decree purported to cover the whole tract, but it did not have that effect, as his answer was a specific defense as to his two acres only.

Fifteen thousand dollars was the price paid Chezum for the land, and the compromise made was an eminently prudent one for his grantees.    The tax deed was void and the fact of the true date of the sale must have come out on a trial of the cause.    The allegation of a false date in the answers was all that saved them from failure on demurrer. The action of the court in sustaining the demurrer to the reply was certain to be reversed on appeal, since it contained a general and full denial of all the facts alleged concerning the tax deed.    Thus the defendants had nothing to operate in favor of their retaining possession of any of the land but the fact that the guardian was without means belonging to the estate to prosecute an appeal.    Chezum was bound, under the warranties of his deed, to successfully defend the title or make it good.    He refused to do either, and left his grantees to make the best arrangement they could.    Having done that he is bound to reimburse them what they paid for the title and their necessary expenses in the litigation.

The only question is, whether this outlay of the appellants can be set off against a complaint to foreclose the mortgage, by way of an affirmative defense.    The cov-

enant in the deed was that the grantor was the *owner in fee simple* of the premises. This was a covenant of seizin, and was broken the moment it was made. Neither the legal nor the equitable title was in the grantor, and the possession which he surrendered had nothing to support it. There was no actual eviction, but the suit commenced by the guardian was a constructive one which compelled appellants to pay for the title their grantor had warranted.

When this suit was commenced the liability of Chezum was fixed and liquidated, and was a subsisting cause of action against him in favor of the principal defendants. Moreover, it arose out of the transaction constituting the foundation of the plaintiff's claim; and the principal action and the defense both arose on contract. These conditions brought the case clearly within the provisions of our code. Code Proc., §§ 194–95; *Walker v. Wilson*, 13 Wis. 584.

It would be a strange commentary on the supposed advance made by the adoption of the modern codes containing such provisions as ours, if all the matters of difference between a vendor and a purchaser of land, which have been advanced to the position of subsisting causes of action, could not be adjusted in one suit brought to recover a balance of purchase money. Under any system we think this defense could be made. *Rice v. Goddard*, 14 Pick. 293; Jones, Mortgages, § 1504; Wiltsie, Foreclosure, § 384.

Where there has been no fraud and no eviction, either actual or constructive, the rule may be the other way, *Peters v. Bowman*, 98 U. S. 56. But the case before us is not of that kind, and the appellants will not have the rights guaranteed them by the law if they are compelled to submit to a sale without deducting their just set-off against the mortgage. From the evidence it is certain that appellants paid $2,000 for the land, under the compromise, and they are entitled to credit for that sum upon the notes as of the date when they paid it.

As to their expenses, they are entitled to a similar credit for what they paid as the reasonable value of the legal services of their counsel in defense of the guardian's suit; but that should not include the prosecution of the forger of the John Moore deed or the appointment of a guardian. The evidence upon this matter is indecisive, and we refer the cause to the superior court to hear further evidence on both sides, and determine the amount proper to be allowed, not exceeding $2,000. The answer was framed as a defense, not as a counter-claim, and no special damages were pleaded; none are therefore allowed.

A motion was made to retax costs. It is said that the first four items covering clerk's, sheriff's and attorney's fees, $56.65, were connected with the erroneous entry of a judgment by default, the same being thereafter set aside by stipulation. The cost bill does not show these facts, and as no other costs for like matters appear to be included, they will stand, except the attorney's fee. There is an item of $131.60 for "copies served in the conduct of the action, 658 folios." The record does not support any such charge, and it is disallowed. Where under any statute or rule of court costs of this kind, which depend on facts not ascertainable from the record of the case, the cost bill should itemize the charge so that the opposing party may know what is claimed.

"Abstract of mortgaged property, $25," is another unsupported item. The abstracts in the case appear to have been put in evidence by appellants.

Costs on execution have no place in the cost bill. They are accruing costs which the sheriff adds as they are made. $26.90 under this head is disallowed.

The notes provided that if suit should be brought upon them the maker would pay "such sum as the court may adjudge reasonable as attorney's fees." The mortgage had it that "a reasonable attorney's fee, equal to five per

cent. of the amount due," should be included in the judgment. Upon a recovery of $6,093.35, the court allowed an attorney's fee of $550. The statute (Code Proc., § 823) allows parties to contracts to make their own agreements as to attorney's fees; but, in the absence of any agreement, § 829 regulates the matter. There was an agreement in this instance, and therefore the statutory fee of fifteen dollars was improperly in the cost bill. The notes and mortgage contituted one transaction, and the effect of the limitation of five per cent. in the mortgage was a construction by the parties of what was a reasonable maximum; therefore, the allowance made was excessive, as it exceeded nine per cent. of the recovery.

This case was tried in May, 1893. June 24th findings and conclusions of law supporting the plaintiff's case were filed, and on the same day the decree was entered. At this time the act of 1893 governing exceptions in all cases legal or equitable, was in force. In September the defendants filed exceptions to the findings on file, and requested the finding of facts which had been established by the evidence and were material to the issues raised by the answer. All these the court refused. Respondent maintains that there was no error because there were findings sufficient to support the judgment.

While the act of 1893 (p. 111) did not expressly make Code Proc., § 379, which directs the procedure on trials by the court, applicable to equity causes, the implication is very strong that it should be so applied. If so, the findings should cover all the issues, and not merely such as may be sufficient to support the judgment.

"The findings should consist of a concise, distinct, pointed and separate statement of each specific, essential fact established by the evidence, in its proper order." *Hidden v. Jordan*, 28 Cal. 306.

Judgments reversed for want of sufficient findings on is-

sues made by answers: *Polhemus v. Carpenter*, 42 Cal. 375; *Roeding v. Perasso*, 62 Cal. 515; *Walker v. Brem*, 67 Cal. 599 (8 Pac. 320).

Precisely the same statute as Code Proc., § 379, has existed in California for many years, except that, under an amendment, findings in writing are now required only after request.    Sec. 3 of the act of 1893 (Laws, p. 112), plainly contemplates that findings shall be filed and time given to except thereto before a judgment is entered thereon, after notice of the filing, if it occurs in the absence of the excepting party; and courts should be liberal in finding facts material to the issues presented by the losing party, since he may desire to appeal upon the law as applied to such facts alone, and will thus be saved the necessity of a statement containing evidence, and much consequent expense.

The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.

DUNBAR, C. J., and ANDERS, SCOTT and HOYT, JJ., concur.